IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CAROL SHILLING,                     :
                                    :
            Plaintiff,              :     Civil No.: 4:05-CV-871
                                    :
      v.                            :     Judge Jones
                                    :
ERIC P. BRUSH, et al.,              :
                                    :
            Defendants.             :

## MEMORANDUM AND ORDER

### January 22, 2007

## THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:

Pending before the Court is a Motion for Summary Judgment ("the Motion"), filed by Defendants Eric Brush, John Walker, Bruce Korty, and the Borough of Montrose ("Defendants") on October 2, 2006. (Rec. Doc. 40-1). For the reasons that follow, the Motion will be granted in part and denied in part.

## PROCEDURAL BACKGROUND:

On April 29, 2005, Plaintiff Carol Shilling ("Plaintiff" or "Shilling") filed her first Complaint in this action. (Rec. Doc. 1). However, on August 26, 2005, this Court entered an Order granting a Motion to Dismiss filed by the Montrose Police Department (doc. 7) and granting Plaintiff leave to file an Amended Complaint. (Rec. Doc. 16). On or about September 16, 2005, Plaintiff filed her

1

Amended Complaint.  (Rec. Doc. 17).

On October 2, 2006, Defendants filed the instant Motion.  (Rec. Doc. 40).

Although no Reply Brief has been filed, the time in which to do so has expired and

Defendants have informed the Court that no such brief is forthcoming.  (<u>See</u> Rec.

Doc. 55).  The Motion is, therefore, ripe for disposition.

## <u>STANDARD OF REVIEW</u>:

Summary judgment is appropriate if "there is no genuine issue as to any

material fact and . . . the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c); <u>see</u> <u>also</u> <u>Turner v. Schering-Plough Corp.</u>, 901 F.2d 335, 340

(3d Cir. 1990).  The party moving for summary judgment bears the burden of

showing "there is no genuine issue for trial."  <u>Young v. Quinlan</u>, 960 F.2d 351, 357

(3d Cir. 1992).  Summary judgment should not be granted when there is a

disagreement about the facts or the proper inferences that a fact finder could draw

from them.  <u>See</u> <u>Peterson v. Lehigh Valley Dist. Council</u>, 676 F.2d 81, 84 (3d Cir.

1982).

Initially, the moving party has a burden of demonstrating the absence of a

genuine issue of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323

(1986).  This may be met by the moving party pointing out to the court that there is

an absence of evidence to support an essential element as to which the non-moving

party will bear the burden of proof at trial.  See id. at 325.

Rule 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e).  The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor.  See Celotex, 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact."  Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true."  Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  Anderson v.

3

Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  "As to materiality, the

substantive law will identify which facts are material."  Id. at 248.  A dispute is

considered to be genuine only if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  Id.

**STATEMENT OF RELEVANT FACTS**:

On December 3, 2002, Plaintiff had a 1997 Chevrolet S-10 truck ("the

truck"), with a recorded mileage of approximately 86,000 miles, inspected at Ted's

Garage.[1]  (Rec. Docs. 40, ¶¶ 2, 5; 50, ¶¶ 1, 2).  On February 16, 2003, and May 2,

2003, Plaintiff was operating the truck, which was owned by Wildlife Rescue, a

non-profit organization that Plaintiff apparently organized, without an inspection

sticker or a registration card.  (Rec. Docs. 40, ¶¶ 1, 5, 6; 50, ¶¶ 1, 5, 6).

On February 16, 2003, Plaintiff was stopped by Officer Eric Brush ("Officer

Brush") because he claimed that she ran a stop sign at the intersection of Chenango

Street and Prospect Street in Montrose.   (Rec. Docs. 40, ¶ 4; 41, Defs.' Exh. 4 at

---

[1] The Court is cognizant that Plaintiff has denied this and several other statements "as
stated."  (Rec. Doc. 50, ¶ 1).  We note that where such statements are denied "as stated," and
Plaintiff's counterstatements serve only to supplement the statements, we will find such
statements undisputed where the record supports such a finding.
    Further, we note that we are aware that Plaintiff's exhibits tend to support her
supplemental averments as to this statement.  For example, Ted's Garage apparently failed the
truck because of Plaintiff's lack of registration card and her failure to present an insurance card.
(Rec. Doc. 52, Pl.'s Exh. H).  However, such averments are not material to our discussion here.

77).  Plaintiff maintains that she did not run the stop sign (docs. 50, ¶ 4; 52, Pl.'s

Exh. W, ¶ 33; 41, Defs.' Ex. 4 at 81), and notes that she was not ticketed for failing

to stop at a stop sign (docs. 50, ¶ 4; 52, Pl.'s Exh. W, ¶ 50).  Rather, Officer Brush

gave Plaintiff a ticket containing two citations, for driving an unregistered and

uninspected vehicle.  (Rec. Docs. 40, ¶ 5; 41, Defs.' Exh. 4 at 87; 50, ¶¶ 4, 5).

Plaintiff was found guilty by a Magistrate for the citations that she received

during the February 16, 2003 traffic stop.  (Rec. Docs. 40, ¶ 6; 50, ¶ 6).  Plaintiff

then appealed the Magistrate's conviction to the Susquehanna County Court.  (Rec.

Docs. 40, ¶ 7; 50, ¶ 7).  Plaintiff claims that when she filed the appeal, she asked

whether she could continue to drive the truck until the appeal was decided and was

told that she could continue to do so.  (Rec. Docs. 50, ¶ 8; 52, Pl.'s Exh. W, ¶ 56;

41, Defs.' Exh. 4 at 103-04).

On May 2, 2003, while Plaintiff's appeal was still pending before the

Susquehanna County Court (docs. 40, ¶ 8; 50, ¶ 9), she was stopped by Officer

Brush because he claimed, again, that she had failed to stop at the intersection of

Chenango Street and Prospect Street in Montrose (docs. 40, ¶ 10; 50, ¶ 10).

Once again, Plaintiff denies that she failed to stop at the stop sign.  (Rec.

Docs. 50, ¶ 10; 52, Pl.'s Exh. W, ¶ 61; 41, Defs.' Exh. 4 at 94-95).  In fact,

Plaintiff claims that although she could not ascertain the identity of the Officer

inside the vehicle at the time, Officer Brush's police cruiser and her truck arrived at the intersection of Chenango and Prospect Streets at the same time, both vehicles stopped, and she waved her left hand to motion the police cruiser to go ahead. (Rec. Doc. 52, Pl.'s Exh. W, ¶¶ 59-65).  Plaintiff claims that the police cruiser "just sat there," so after being "at a dead stop" for approximately 10 seconds, she made a left turn onto Prospect Street.  (Rec. Doc. 52, Pl.'s Exh. W, ¶¶ 65-66).  Plaintiff also notes that Officer Brush testified that he was "'several hundred feet' from the intersection" when he saw Plaintiff's alleged failure to stop.  (Rec. Docs. 50, ¶ 10; 41, Defs.' Exh. 2 at 10).

Plaintiff and Defendants also disagree about the events that transpired after Officer Brush pulled her over on May 2, 2003.  Defendants claim that after Plaintiff pulled over, Officer Brush advised Plaintiff that she was not supposed to be driving the truck because of its lack of inspection sticker and lack of registration card, and that he was going to impound her truck.  (Rec. Doc. 40, ¶ 11).  In contrast, in Plaintiff's affidavit, she claims that Officer Brush did not mention the missing inspection sticker.  (Rec. Doc. 52, Pl.'s Exh. W, ¶ 79).  Rather, Plaintiff contends that after Officer Brush accused her of not stopping at the stop sign, he said that she should not be driving the truck because of the registration problem. (Rec. Doc. 52, Pl.'s Exh. W, ¶ 78).  Plaintiff claims that she then advised Officer

6

Brush that her earlier citations were being appealed and that she had been told that she could drive the truck while the appeal was pending.  (Rec. Doc. 52, Pl.'s Exh. W, ¶ 80).  Plaintiff claims that it was at this point that Officer Brush said he did not care about the appeal and that he was going to impound her truck.[2]  (Rec. Doc. 52, Pl.'s Exh. W, ¶ 80).

Moreover, Plaintiff claims that Officer Brush's demeanor throughout the May 2, 2003 traffic stop was "worse than the first stop" and violent.  (Rec. Doc. 52, Pl.'s Exh. W, ¶¶ 75, 86).  She also claims that he kept his right hand on his gun at all times during the stop.  (Rec. Doc. 52, Pl.'s Exh. W, ¶ 76).  She contends that in response to her expressed concerns about the implications of impounding the vehicle in which she was transporting a cat under anesthesia, he screamed at her so emphatically that he spit on her.  (Rec. Doc. 52, Pl.'s Exh. W, ¶¶ 84-85, 88).  Further, Plaintiff claims that as a result of Officer Brush's behavior during the stop, she believed that he was going to "get physical" with her and/or "rough [her] up pretty badly" and/or hit her, and that she was afraid.  (Rec. Doc. 52, Pl.'s Exh. W, ¶¶ 89, 91, 93).

Thus, Plaintiff claims that Officer Brush's threatening behavior caused her

---

[2] Plaintiff contends that Officer Brush's failure to impound Plaintiff's truck at any time following this incident reveals that he had no true interest in impounding it.  (Rec. Docs. 50, ¶ 11; 41, Defs.' Exh. 4 at 159).

to flee the scene of the May 2, 2003 traffic stop in the hopes of finding a witness. (Rec. Doc. 52, Pl.'s Exh. W, ¶¶ 85-95).  Plaintiff contends that she did not plan to drive all the way home.  (Rec. Doc. 52, Pl.'s Exh. W, ¶ 95).  Whatever Plaintiff's motive and intention, she drove away from the scene of the stop and to her home, without permission of Officer Brush.  (Rec. Docs. 40, ¶ 12; 50, ¶ 12; 41, Defs.' Exh. 2 at 15).

Plaintiff and Defendants agree that Plaintiff was ultimately pursued by both Officer Brush and Officer John Walker ("Officer Walker"): Officer Brush in his police cruiser and Officer Walker in his personal vehicle.  (Rec. Docs. 40, ¶ 13; 50, ¶ 13; 41, Defs.' Exh. 2 at 17, Defs.' Exh. 4 at 120).  Plaintiff contends that she did not know who Officer Walker was, that he wearing a baseball style cap in his personal vehicle, a "small white Jeep-looking vehicle,"and that he tried to "run [her] off the road" twice.  (Rec. Docs. 50, ¶ 13; 41, Defs.' Exh. 4 at 124-127). However, Officer Brush testified that Officer Walker's hat said "police" on it and that he was merely attempting to stop Plaintiff.  (Rec. Doc. 41, Defs.' Exh. 2 at 19).

After a "chase" that even Officer Brush characterized as "so slow," Plaintiff and the two Officers in pursuit arrived at her home.  (Rec. Docs. 41, Defs.' Exh. 2 at 2, l. 23; 40, ¶ 13; 50, ¶ 13).  Plaintiff then ran inside her home and locked the

door, allegedly because she feared for her safety.  (Rec. Docs. 50, ¶ 14; 41, Defs.' Exh. 4 at 140).  Although Officers Brush and Walker did not enter Plaintiff's home because they heard barking dogs and allegedly feared for their safety (docs. 40, ¶ 15; 41, Defs.' Exh. 2 at 22), Officers Brush and Walker tried the doorknob and then yelled into the home (doc. 41, Defs.' Exh. 2 at 22).  Plaintiff contends that Officer Brush broke the lock on her screened door.  (Rec. Doc. 50, ¶ 14).

In his deposition, Officer Brush testified that after deciding not to enter Plaintiff's home, he stayed outside of the front door while Officer Walker went around the side of the house.  (Rec. Doc. 41, Defs.' Exh. 5 at 43).  Defendants also allege that while Officer Walker was in Plaintiff's backyard, a neighbor advised him that Plaintiff owned a shot gun.  (Rec. Doc. 40, ¶ 16).  Plaintiff admits owning a 22 rifle, but denies that the Officers were given any indication that they should fear for their safety.  (Rec. Doc. 50, ¶ 16).

Meanwhile, Plaintiff claims that she dialed 911 and was put through to the Pennsylvania State Police, who persuaded her to go back outside.  (Rec. Docs. 50, ¶ 14; 41, Defs.' Exh. 4 at 140-46).  However, the State Police did not release the tape of the alleged conversation that was allegedly requested because they could not find it.  (Rec. Doc. 41, Defs.' Exh. 4 at 146).

Sometime after she had entered her home, Plaintiff emerged from it and was

advised that she was under arrest.  (Rec. Docs. 40, ¶ 17; 50, ¶ 17).  Plaintiff claims

that she was hyperventilating when she exited.  (Rec. Docs. 50, ¶ 17; 52, Pl.'s Exh.

W, ¶ 137).  After informing the Officers that she needed to go back into the home

to lock her basement door, she did so.  (Rec. Docs. 40, ¶ 18; 41, Defs.' Exh. 4 at

149; 50, ¶ 18).

Plaintiff then re-emerged from the home and onto her porch.  (Rec. Docs.

40, ¶ 19; 50, ¶ 19).  Plaintiff contends that she came out with her hands up and that

Officers Brush and Walker had their hands on their guns.  (Rec. Docs. 50, ¶ 19; 41,

Defs.' Exh. 4 at 151).  However, Officer Walker claims that her arms were by her

side and she walked toward her truck.  (Rec. Doc. 41, Defs.' Exh. 6 at 30).

Plaintiff and Defendants also disagree as to what happened next.  Plaintiff

claims that she:

> walked off the deck with [her] hands up, [she] made the turn, [she] threw
> [her] keys in the truck . . . [She] put [her] hands down as – and the Officers
> were behind [her] – as [she] was right next to the truck, and as soon as [she]
> put [her] hands down Officer Brush grabbed [her] left arm, twisted it very
> severely, and slammed [her] into the truck.

(Rec. Doc. 41, Defs.' Exh. 4 at 152).  Plaintiff contends that she was handcuffed so

violently that her left hand hit the back of her head and that the handcuffs were so

tight that her hands were turning blue.  (Rec. Docs. 50, ¶ 20; 52, Pl.'s Exh. W, ¶¶

147, 157).  Plaintiff also claims that Officer Brush "ransacked" her truck without

consent and took all of her paperwork relating to the truck's registration and inspection issues. (Rec. Docs. 50, ¶ 20; 41, Defs.' Exh. 4 at 154).

However, Defendants contend that following Plaintiff's re-emergence from the house, she walked toward her truck, and, in fact, started to enter the vehicle. (Rec. Doc. 41, Defs.' Exh. 6 at 30). Officer Walker testified that he followed Plaintiff, advised her that she was under arrest, removed her from the truck, and began to handcuff her. (Rec. Doc. 41, Defs.' Exh. 6 at 30-31). Officer Walker also testified that Officer Brush aided him in handcuffing Plaintiff after she made an effort to resist. (Rec. Doc. 41, Defs.' Exh. 6 at 31). Further, Officer Brush testified that Plaintiff consented to the search of her truck. (Rec. Doc. 41, Defs.' Exh. 5 at 30-31).

At Plaintiff's request, Officer Walker loosened Plaintiff's handcuffs and then reapplied them in front of her. (Rec. Doc. 40, ¶ 21; 50, ¶ 21). Plaintiff claims that before Officer Walker loosened the handcuffs, he asked her what she had done, she replied that there was a problem with her registration, and Officer Walker's jaw dropped upon hearing her reply. (Rec. Docs. 50, ¶ 21; 52, Pl.'s Exh. W, ¶ 156). Plaintiff also claims that Officer Brush was not happy about the fact that Officer Walker loosened her handcuffs. (Rec. Docs. 50, ¶ 22; 52, Pl.'s Exh. W, ¶ 158; 41, Defs.' Exh. 4 at 158-59).

11

Plaintiff was then taken to the Montrose Police Department, where at some point thereafter, her handcuffs were removed and she was permitted to use the telephone.  (Rec. Docs. 40, ¶ 22; 50, ¶ 22).  Plaintiff claims that Officer Walker removed her handcuffs against the wishes of Officer Brush.  (Rec. Docs. 50, ¶ 21; 52, Pl.'s Exh. W, ¶ 158; 41, Defs.' Exh. 4 at 158-59).

Plaintiff notes that Officer Brush did not have the camera on in his police cruiser, which if operating would have recorded the May 2, 2003 stop, and that as a result, the facts of the incident are a matter of her word against Officer Brush's.  (Rec. Doc. 50, ¶ 26; 52, Pl.'s Exh. 2, ¶¶ 27-28).  Plaintiff also notes that under 3.9.1 of the Montrose Police Department's training manual, officers are responsible for checking "the police car and the equipment in it at the start of duty."  (Rec. Doc. 50,  ¶ 26; 52, Pl.'s Exh. S at 2).

Sometime after May 2, 2003, Plaintiff's appeal of the convictions resulting from the February 16, 2003 stop was heard, she lost, and she was required to pay the fines that Officer Brush had imposed at that stop.  (Rec. Docs. 40, ¶ 9; 50, ¶ 9; 52, Pl.'s Exh. W, ¶ 57).

Also, sometime after May 2, 2003, Plaintiff received by mail the charges brought against her by Officer Brush for the incident that took place on that date.  (Rec. Docs. 40, ¶ 23; 50, ¶ 23).  On June 12, 2003, Magistrate Watson Dayton

dismissed some of the charges and upheld others for trial in Susquehanna County
Court.  (Rec. Docs. 40, ¶ 24; 50, ¶ 24).

   Although Plaintiff had not originally been charged with the offense (docs.
50, ¶ 25; 52, Pl.'s Exhs. U, V), on February 27, 2004, Plaintiff pled guilty to
disorderly conduct before Judge Seamans of the Court of Common Pleas for
Susquehanna County as part of a plea bargain.  (Rec. Doc. 40, ¶ 25; 50, ¶ 25).
Accordingly, she admitted to a factual summary of the May 2, 2003 incident that
was provided by a representative from the Susquehanna District Attorney's Office
(docs. 40, ¶ 26; Defs.' Ex. 3 at 8-10) and was fined $350 and the costs of
prosecution (docs. 40, ¶ 28; 50, ¶ 28).  Thus, on April 2, 2004, an Order for Nolle
Prosequi was entered dismissing the remaining charges against Plaintiff.

   In light of Plaintiff's pending claims, some attention to education and
training of the Montrose Police Department Officers is necessary.

   On January 1, 2000, after previously receiving his Act 120 training, Bruce
Korty was named Chief of Police for Montrose Borough.  (Rec. Docs. 40, ¶ 35; 50,
¶ 35).

   Contrary to Defendants' seemingly erroneous assertion that the Montrose
Police Department had three manuals (doc. 50, ¶ 36), Plaintiff appears to correctly
note that at the time Korty became Chief, Montrose Borough had one training

manual consisting of two parts: The Duty Manual of the Montrose Police Department and the Discipline Code of the Montrose Police Department.  (Rec. Docs. 50, ¶ 36; 52, Pl.'s Exh. T).  Plaintiff also appears to accurately note that at the time of the May 2, 2003 incident, the training manual had not be updated since 1984 and contained no regulations concerning the use of a personal vehicle in a pursuit or the approach of a vehicle with a hand on the officer's weapon.  (Rec. Docs. 50, ¶ 36; 41, Defs.'s Exhs. 6 at 11; 7 at 6, 11, 24).  Further, Chief Korty and Officer Walker's testimony indicate that Montrose Police Department gave its Officers no other instruction on those issues.  (Rec. Doc. 41, Defs.' Exhs. 6 at 11; 7 at 11).

Officer Brush completed his Act 120 training in 1995 at Lackawanna Junior College in Scranton.  (Rec. Docs. 40, ¶ 29; 50, ¶ 29).  Prior to joining the Montrose Police Department ("the Department"), he was employed by Police Departments in Forest City, Oakland, Susquehanna and Lansboro, Pennsylvania.  (Rec. Docs. 40, ¶ 29; 50, ¶ 29).  Plaintiff contends that Officer Brush was hired by the Department on January 8, 2003.  (Rec. Doc. 52, Pl.'s Exh. S).

The Chief of Police for the Department at the time of the May 2, 2003 incident, Bruce Korty ("Chief Korty") testified that during the course of Officer Brush's employment, he became aware of at least one complaint lodged against

14

Officer Brush: the Mayor received a complaint that Officer Brush was brusque during a traffic stop.  (Rec. Doc. 41, Defs.' Exh. 7 at 31).  However, Chief Korty testified that no action or investigation was undertaken following the complaint. (Rec. Doc. 41, Defs.' Exh. 7 at 31).

Defendants contend that through the Department, Officer Brush received training consisting of mandatory Act 120 updates; legal updates; training on firearms, first aid, CPR; and forensic statement analysis and clandestine lab courses.  (Rec. Docs. 40, ¶ 30; 41, Defs.' Exh. 5 at 26).  Plaintiff disputes this, relying on the testimony of Chief Korty, who stated that he neither conducted training personally nor had "anyone come in from outside Montrose to conduct training."  (Rec. Doc. 41, Defs.' Exh. 7 at 7).  Additional testimony by Chief Korty may reconcile these differing assertions: Chief Korty maintains that he arranged for Act 120 updates and weapons qualifications every year, ensured officers' CPR and first aid certifications were up-to-date, made available brochures on local training, and subscribed to periodicals related to changes in criminal law.  (Rec. Doc. 41, Defs.' Exh. 7 at 7).

Nevertheless, Plaintiff notes that as of April 24, 2003, Officer Brush was not recertified because he had not completed the requisite training.  (Rec. Doc. 52, Pl.'s Exh. S).  However, Chief Korty explains this circumstance as a mix-up that

15

was rectified shortly after the Department became aware of it.  (Rec. Doc. 41, Defs.' Exh. 7 at 19-20).

Officer Walker received an Associate Degree in Criminal Justice from Lackawanna Junior College, which included Act 120 training.  (Rec. Docs. 40, ¶ 31; 50, ¶ 31).  Officer Walker also graduated from the U.S. Army Military Police School in Fort McClellan, Alabama.  (Rec. Docs. 40, ¶ 32; 50, ¶ 32).  From 1981 until 1983, Officer Walker had a part-time position for the municipal police department that covered Hallstead, Great Bend, and New Milford Boroughs; from 1983 until 1984 to 1986, he held a full-time position with the Clarks Summit Borough Police Department; and from 1986 until 1995, he was in the military. (Rec. Doc. 41, Defs.' Exh. 6 at 6-8).

The parties dispute when Officer Walker became employed by the Department.  Officer Walker testified that he began work for the Department in 1992.  (Rec. Doc. 41, Defs.' Exh. 6 at 8).  However, Plaintiff contends that Officer Walker was hired by the Department on May 22, 2002.  (Rec. Docs. 50, ¶ 33; 52, Pl.'s Exh. R).  During his employ by the Department, Officer Walker's only training consisted of a ride-along and an Emergency Vehicle Operations Course, which was required because he had been out-of-state for so long.  (Rec. Doc. 41, Defs.' Exh. 6 at 10-11).

16

Chief Korty testified that the Mayor or Borough Council may have received complaints related to Officer Walker, but could only "vaguely recall something that Officer Walker had said . . . ."  (Rec. Doc. 41, Defs.' Exh. 7 at 32).

## DISCUSSION:

In the instant Motion (doc. 40-1), Defendants seek summary judgment in their favor on all of the claims made against them in Plaintiff's Amended Complaint (doc. 17).  They argue that pursuant to Rule 56 of the Federal Rules of Civil Procedure, they are entitled to summary judgment on all claims because there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law.  (Rec. Doc. 40-1).

### A.   Plaintiff's 42 U.S.C. § 1983 Claims

In her Amended Complaint (doc. 17), Plaintiff brings a plethora of claims pursuant to 42 U.S.C. § 1983 ("§ 1983").  In Count I, Plaintiff alleges that Defendant Borough of Montrose ("the Borough") violated § 1983 by failing to adequately train and supervise Officers Brush and Walker.  In Count II, Plaintiff alleges that Chief Korty is liable for violation of § 1983 because of his status as the supervisor of Officers Brush and Walker.  In Count III, Plaintiff alleges that the "individual Defendants," which we construe to mean Officers Brush and Walker, violated § 1983 by maliciously prosecuting Plaintiff, abridging her Fourth

17

Amendment rights, engaging in abuse of process, making a false arrest, and using

excessive force.

The logical starting point of our analysis for each of these Counts is

consideration of the text of § 1983.  It provides:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person
> within the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper proceeding for
> redress . . .

42 U.S.C. § 1983.

We note that despite the order of the Counts in the Amended Complaint

(doc. 17) and the corresponding manner in which they have been briefed (docs. 42,

50), we will address Count III prior to Counts I or II because our determination as

to the viability of the claims within Count III impacts the viability of Counts I and

II.

## 1.    Count III

In Count III, Plaintiff alleges that Officers Brush and Walker violated § 1983

by maliciously prosecuting Plaintiff, abridging her Fourth Amendment rights,

engaging in abuse of process, making a false arrest, and using excessive force.

(Rec. Doc. 17).

### a.      Plaintiff's Claims of Malicious Prosecution

We first consider whether Officers Brush and Walker are entitled to summary judgment on Plaintiff's § 1983 claims stemming from her contention of malicious prosecution.  In their Brief in Support of the Motion, Defendants argue that they are entitled to summary judgment on Plaintiff's malicious prosecution claims because Defendants had probable cause to arrest Plaintiff on May 2, 2003 and Plaintiff will not be able to establish that the proceedings arising out of the arrest ended in her favor.  (Rec. Doc. 42 at 6).  In her Brief in Opposition, Plaintiff argues that summary judgment on her malicious prosecution claims should be denied because "[c]onviction for disorderly conduct is a favorable termination when a second more serious and fundamentally different charge is dismissed" and because Officer Brush was not a certified police officer.  (Rec. Doc. 50 at 21).

In Donahue v. Gavin, 280 F.3d 371, 379 (3d Cir. 2002), the Third Circuit notes that following the Supreme Court's plurality decision in Albright v. Oliver, 510 U.S. 266 (1994), which held that substantive due process provides no relief under § 1983, the Third Circuit has had several occasions on which to revisit its decision in Lee v. Mihalich, 847 F.2d 66 (3d Cir. 1988), which had assumed that proving violation of the common law tort of malicious prosecution also proved a violation of substantive due process that would support a § 1983 claim for

19

malicious prosecution.  For example, in <u>Gallo v. City of Philadelphia</u>, 161 F.3d 217, 221 (3d Cir. 1998), the Third Circuit recognized that in <u>Albright</u>, the Supreme Court "'left open the possibility that Albright could have succeeded if he had relied on the Fourth Amendment.'"  <u>Donahue</u>, 280 F.3d at 380.  However, in <u>Donahue</u>, the plaintiff's claim failed because of failure to establish a Fourth Amendment violation.  <u>Id.</u> at 382.

In the instant action, Plaintiff has alleged a separate Fourth Amendment violation.  Whether such a separate allegation is sufficient to ground Plaintiff's instant malicious prosecution claims in the Fourth Amendment is not a question we need resolve because even assuming <u>arguendo</u> that it is, the Third Circuit's dicta on the elements of malicious prosecution, particularly the element requiring "'the termination of the prior criminal proceeding in favor of the accused,'" <u>Donahue</u> is instructive.  280 F.3d at 383 (quoting <u>Heck v. Humphrey</u>, 512 U.S. 477, 484 (1994)).  The Third Circuit indicates that "[a] nol pros signifies termination of the charges in favor of the accused only when their final disposition is such as to indicate the innocence of the accused."  <u>Id.</u> (citation and internal quotations omitted).  Accordingly, the Third Circuit has held that "'a § 1983 plaintiff 'must be innocent of the crime charged in the underlying prosecution.'"  <u>Id.</u> (quoting <u>Hector v. Watt</u>, 235 F.3d 154, 156 (3d Cir. 2000)).

Plaintiff herself has submitted as an exhibit the Nolle Prosequi filed in the criminal case against her that arose out of the May 2, 2003 incident.  (Rec. Doc. 52, Pl.'s Exh. V).  As indicated on the submission, the reason for the Nolle Prosequi was Plaintiff's guilty plea to a disorderly conduct charge that arose from the May 2, 2003 incident.  Further, when Plaintiff entered her guilty plea, she admitted to a factual summary of the May 2, 2003 incident that was provided by a representative from the Susquehanna District Attorney's Office.  (Rec. Docs. 40, ¶ 26; Defs.' Ex. 3 at 8-10).  Accordingly, there is no genuine issue of material fact: Plaintiff is not innocent of all of the charges arising out of the events on May 2, 2003.  Thus, Officers Brush and Walker are entitled to judgment as a matter of law on Plaintiff's § 1983 claims stemming from allegations of malicious prosecution, and we will grant Defendants' Motion with respect to those § 1983 claims against them.

Moreover, there is also at least one additional ground for granting Defendants' Motion with respect to Plaintiff's malicious prosecution claims: probable cause for her arrest existed.  As our colleague from the Western District of Pennsylvania has noted, "[w]hether raised under Section 1983 or state law, claims for false arrest, malicious prosecution, and abuse of process require a lack of probable cause."  Frederick v. Hanna, 2006 U.S. Dist. LEXIS 87037, at *30 (W.D. Pa. Dec. 1, 2006) (citing Marable v. W. Pottsgrove Twp., 2005 U.S. Dist.

LEXIS 13754, at **18-19 (E.D. Pa. July 8, 2005); <u>Brockington v. Philadelphia</u>,

354 F. Supp. 2d 563, 572 n.10 (E.D. Pa. 2005)).  In determining whether probable

cause existed, the issue is whether "if 'at the moment the arrest was made . . . the

facts and circumstances within [the officers'] knowledge and of which they had

reasonably trustworthy information were sufficient to warrant a prudent man in

believing that [the suspect] had committed or was committing an offense.'"

<u>Wright v. City of Philadelphia</u>, 409 F.3d 595, 602 (3d Cir. 2005) (quoting <u>Beck v.

Ohio</u>, 379 U.S. 89, 91 (1964)).  However, probable cause is established by a guilty

plea.  <u>See</u> <u>Frederick</u>, 2006 U.S. Dist. LEXIS 87037, at *30.  <u>See also</u> <u>Imbergamo v.

Castaldi</u>, 392 F. Supp. 2d 686, 696 (M.D. Pa. Oct. 4, 2005) (noting that the

defendant's guilty plea to disorderly conduct conclusively established the existence

of probable cause).

Accordingly, Defendants are also entitled to summary judgment on

Plaintiff's § 1983 claims for malicious prosecution on this ground.[3]

### b.    Plaintiff's Claims of Fourth Amendment Violation

We next consider whether Officers Brush and Walker are entitled to

summary judgment on Plaintiff's § 1983 claims stemming from alleged violations

---

[3] For reasons that will be explained below, Defendants are also entitled to summary judgment on Plaintiff's § 1983 claims for abuse of process on this basis.

of the Fourth Amendment.  In their Brief in Support of the Motion, Defendants

argue that they are entitled to summary judgment on Plaintiff's Fourth Amendment

claims because even assuming arguendo that the Officers' taking of Plaintiff's

paperwork in her truck constituted an unlawful seizure, Plaintiff suffered no harm

therefrom because it was not used in the proceedings against her that stemmed

from the May 2, 2003 incident.  (Rec. Doc. 42 at 7).  Defendants cite a single,

twenty-seven year old district court case from this district in support of this

proposition, but notably our reading of the case reveals that it is distinguishable

from the instant case because that plaintiff had received an unfavorable ruling on a

suppression motion and the instant Plaintiff never filed a suppression motion.  See

Lomax v. Smith, 501 F. Supp. 119 (E.D. Pa. 1980).  Further, binding authority

seems to indicate that the contrary is true: "'whether the exclusionary sanction is

appropriately imposed in a particular case, our decisions make clear, is an issue

separate from the question whether the Fourth Amendment rights of the party

seeking to invoke the rule were violated by police conduct.'" Gibson v.

Superintendent of N.J. Dep't of Law & Pub. Safety-Division of State Police, 411

F.3d 427, 438-39 (3d Cir. 2005) (quoting United States v. Leon, 468 U.S. 897, 906

(1984)) (internal quotations omitted).

        In her Brief in Opposition, Plaintiff argues that summary judgment on her

Fourth Amendment claims should be denied because Officer Brush's seizure of

Plaintiff herself was a violation of the Fourth Amendment and "[i]t is immaterial

whether the items that were unlawfully seized were introduced into evidence

during the Preliminary Hearing on June 12, 2003."  (Rec. Doc. 50 at 22).

Our review of the law on this issue begins with the text of the Fourth

Amendment, which provides:

> The right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be violated, and
> no Warrants shall issue, but upon probable cause, supported by Oath or
> affirmation, and particularly describing the place to be searched, and the
> person or things to be seized.

U.S. CONST. amend IV.

The Supreme Court has held that "'seizure' alone is not enough for § 1983

liability; the seizure must be 'unreasonable.'"  Brower v. County of Inyo, 489 U.S.

593, 599 (1989).  In Open Inns, Ltd. v. Chester County Sheriff's Dep't, 24 F. Supp.

2d 410 (E.D. 1998), a colleague from the Eastern District of Pennsylvania provides

an instructive summary of the Supreme Court's jurisprudence for determining

whether a seizure of property has occurred.  "[A] 'seizure' of property occurs when

'there is some meaningful interference with an individual's possessory interest in

that property.'"  Open Inns, Ltd., 24 F. Supp. 2d at 424 (quoting Soldal v. Cook

County, 506 U.S. 56 (1992)) (internal quotations omitted).  In contrast, a seizure of

a person occurs "when, 'taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Kaupp v. Texas, 538 U.S. 626, 629 (2003) (quoting Florida v. Bostic, 501 U.S. 429, 437 (1991)) (internal quotations and citations omitted).

Upon a finding of seizure, courts must consider the reasonableness thereof. Although "'the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application,'" id. (quoting Bell v. Wolfish, 441 U.S. 520 (1979)), it is an objective inquiry.  See Graham v. Connor, 490 U.S. 386, 397 (1989) (noting that in the Fourth Amendment context, the "reasonableness" inquiry is objective).

However, it is well-established that consent to search or seizure waives all rights under the Fourth Amendment.  See Schneckloth v. Bustamonte, 412 U.S. 218 (1973).

In the instant matter, Plaintiff claims that unlawful seizures of her person and her papers, relating to her truck's registration and inspection problems, occurred.  (Rec. Doc. 50 at 22).  We consider first the search of Plaintiff's truck and alleged seizure of Plaintiff's papers therein.  As noted, Defendants argue that even if such papers were seized, they never used against her, and thus, Plaintiff has

suffered no harm.  We reiterate that this argument fails because of <u>Gibson's</u> finding that whether evidence is offered against a criminal defendant is a separate question from that of whether Fourth Amendment rights have been violated in a civil case. <u>See</u> 411 F.3d at 438-39.

However, as Plaintiff herself alleges (docs. 50, ¶ 20; 52, Pl.'s Exh. W, ¶ 151) that Officer "Brush ransacked Plaintiff's truck without consent," and not Officer Walker, we will dismiss Plaintiff's § 1983 claim of Fourth Amendment violation against Officer Walker.  Nevertheless, because there is a genuine issue of material fact regarding whether Plaintiff consented to the undisputed search of Plaintiff's truck by Officer Brush and the alleged seizure of Plaintiff's papers (docs. 50, ¶ 20; 41, Defs.' Exhs. 4 at 154; 5 at 30-31), we hold that Officer Brush is not entitled to summary judgment on this claim.

As to the alleged Fourth Amendment violation involving the seizure of Plaintiff's person, we note that Plaintiff has failed to plead that Officer Brush's May 2, 2003 traffic stop of Plaintiff constituted an unlawful seizure or that the Officers' subsequent arrest constituted an unlawful seizure.  (<u>See</u> Rec. Doc. 17 at 8).  Our assumption is that she concedes that these actions were not unreasonable. Rather, Plaintiff pleaded only that "Plaintiff's rights under the Fourth Amendment were violated in that she had to post bond, was compelled to attend all Court

26

Hearings and her travel was limited resulting in a show of official authority restraining liberty." (Rec. Doc. 17 at 8). Notably, each of the "violations" alleged do not constitute a "seizure" of a person under the Fourth Amendment. Accordingly, we hold that Defendants are entitled to summary judgment on Plaintiff's claim that her Fourth Amendment rights were violated during the alleged seizures of Plaintiff's person.

### c.      Plaintiff's Claims of Abuse of Process

We next consider whether Officers Brush and Walker are entitled to summary judgment on Plaintiff's § 1983 claims stemming from her contention that the Officers are liable for abuse of process. In their Brief in Support of the Motion, Defendants argue that they are entitled to summary judgment on these claims because claims based on abuse of process are only actionable under § 1983 if defendants' actions are so egregious as to deprive a person of rights of constitutional dimension. (Rec. Doc. 42 at 7). In her Brief in Opposition, Plaintiff argues that summary judgment should be denied "since the Plaintiff obviously has had a deprivation of Constitutional dimensions." (Rec. Doc. 50 at 23).

Both parties cite only one authority in support of their arguments on this issue, Whatley v. Philo, 817 F.2d 19 (5th Cir. 1987). However, that case could only serve as a persuasive authority to this Court. Moreover, neither party

accurately represents the proposition for which the case stands.  In <u>Whatley</u>, the

plaintiff brought an abuse of process claim grounded in his right to due process.

<u>Id.</u> at 22.  In affirming the lower court's dismissal of this claim, the Fifth Circuit

reiterated that "'misuse of legal procedure, without more, does not rise to the level

of a constitutional wrong remedied by § 1983.'" <u>Id.</u> (quoting <u>Beker Phosphate Co.</u>

<u>v. Muirhead</u>, 581 F.2 1187, 1188 (5th Cir. 1978)).  The Fifth Circuit also went on

to state that "[a]t most, <u>Beker</u> supports the proposition that, to be actionable under

§ 1983, the misuse of legal process must be 'egregious.'" <u>Id.</u> (emphasis added).

The Third Circuit authority that we could find on this issue treats abuse of

process claims as arising out of state law.  <u>See</u>, <u>e.g.</u>, <u>Cook v. Wilker</u>, 320 F.3d 431,

433 (3d Cir. 2003); <u>City of Erie v. Guaranty Nat'l Ins. Co.</u>, 109 F.3d 156, 158 n.1

(3d Cir. 1997); <u>Livingstone v. North Belle Vernon Boro.</u>, 91 F.3d 515, 522 (3d Cir.

1996).  However, <u>Frederick</u>, 2006 U.S. Dist. LEXIS 87037, at *30, suggests that a

§ 1983 claim for abuse of process is possible.

Whether a § 1983 claim grounded in an abuse of process claim is viable is a

question we need not address, however, because any plaintiff alleging abuse of

process must demonstrate that a lack of probable cause existed.  <u>Frederick</u>, 2006

U.S. Dist. LEXIS 87037, at *30.  Because Plaintiff's guilty plea to disorderly

conduct establishes that probable cause existed to support her arrest, Defendants

are entitled to summary judgment on these claims.  See Frederick, 2006 U.S. Dist.

LEXIS 87037, at *30; Imbergamo, 392 F. Supp. 2d at 696.

### d.    Plaintiff's Claims of False Arrest

We next consider whether Officers Brush and Walker are entitled to

summary judgment on Plaintiff's § 1983 claims stemming from her contention that

they are liable for false arrest.  In their Brief in Support of the Motion, Defendants

argue that they are entitled to summary judgment on these claims because probable

cause supports the arrest.  (Rec. Doc. 42 at 8).  In her Brief in Opposition, Plaintiff

argues that summary judgment should be denied because Officer Brush was not a

certified police officer at the time of the arrest and Officer Walker violated

Pennsylvania law by using an unmarked personal vehicle, without sirens or red

lights, to pursue Plaintiff and attempt to force her off of the road.  (Rec. Doc. 50 at

23).

The Third Circuit has held that "an arrest without probable cause is a

constitutional violation actionable under § 1983."  Patzig v. O'Neil, 577 F.2d 841,

848 (3d Cir. 1978).  When looking to the elements of false arrest, however, the

Third Circuit considers the elements of the tort in state law.  See Gibson, 411 F.3d

at 451.  In Pennsylvania, "false arrest is defined as 1) an arrest made without

probable cause or 2) an arrest made by a person without privilege to do so."  Renk

v. City of Pittsburgh, 641 A.2d 289, 295 n.2 (Pa. 1994).

However, "[i]t is well-established that 'the doctrines of res judicata and collateral estoppel have a place in section 1983 litigation.'" Kossler v. Crisanti, 2005 U.S. Dist. LEXIS 15584, at *16 (W.D. Pa. 2005) (quoting Switlik v. Hardwicke Co., Inc., 651 F.2d 852, 858 (3d Cir. 1981)).  "The guiding principle is that 'an action under section 1983 [cannot] be maintained on the basis of events leading to a conviction which has not been reversed or impaired by other official proceedings if a judgment in favor of the plaintiff in the civil case would imply that the conviction was invalid."[4] Kossler, 2005 U.S. Dist. LEXIS 15584, at *16-17 (quoting Nelson v. Jashurek, 109 F.3d 142, 144 (3d Cir. 1997)).  Thus, "a conviction of an offense for which a plaintiff was arrested generally bars a § 1983 false arrest claim." Jackson v. Mills, 1997 U.S. Dist. LEXIS 18017, at *4 n.1 (E.D. Pa. 1997) (citing Heck, 512 U.S. 477; Smithart v. Towery, 79 F.3d 951 (9th Cir. 1996); Wells v. Bonner, 45 F.3d 90, 95 (5th Cir. 1995)).  See also Ehly v. City of Philadelphia, 2004 U.S. Dist. LEXIS 23089, at *10-11 (W.D. Pa. 2004) (the court

---

[4] We note that this jurisprudence on false arrest claims does not disturb our holding that Plaintiff's § 1983 claim against Officer Brush for Fourth Amendment violation, arising out of his search and alleged seizure of documents from her truck, is viable.  We so conclude because of the Third Circuit's finding that "[a]lthough a successful Fourth Amendment civil claim might suggest that certain evidence should have been excluded at a criminal trial, that issue will never be reached in the civil context and therefore, the successful civil claim will not necessarily imply the invalidity of the underlying criminal conviction." Gibson, 411 F.3d at 439.

dismissed the plaintiff's unlawful arrest, malicious prosecution, and false arrest claims because "admission to the charge of simple assault, much like a guilty plea, conclusively establishes the existence of probable cause for arrest and prosecution.").

We hold that Officers Brush and Walker are entitled to summary judgment on Plaintiff's false arrest claims for two reasons.  First, any finding that Plaintiff's false arrest claims were valid would necessarily and impermissibly imply that her underlying conviction for disorderly conduct was invalid.  Nelson, 109 F.3d at 144.  Second, Plaintiff's guilty plea to disorderly conduct establishes that probable cause existed to support her arrest.  See Frederick, 2006 U.S. Dist. LEXIS at *30; Imbergamo, 392 F. Supp. 2d at 696.  Although Plaintiff argues that Officer Brush's potential lack of certification as of her May 2, 2003 arrest renders him liable for false arrest, we find such argument unpersuasive.  Had Plaintiff wished to challenge Officer Brush's status as a police officer, she should have done so prior to her entry of the guilty plea.

### e.  Plaintiff's Claims of Excessive Force

We next consider whether Officers Brush and Walker are entitled to summary judgment on Plaintiff's § 1983 claims stemming from her contention that they are liable for use of excessive force.  In their Brief in Support of the Motion,

Defendants argue that they are entitled to summary judgment on these claims because the force that they exerted was not unreasonable under the circumstances, and even assuming arguendo that it was, they are entitled to qualified immunity. (Rec. Doc. 42 at 9-11).  In her Brief in Opposition, Plaintiff argues that summary judgment should be denied because the force exerted was unreasonable.[5]  (Rec. Doc. 50 at 24).

Plaintiff's Amended Complaint (doc. 17 at 9) alleges that the conduct of Officers Brush and Walker constituted excessive use of force in violation of the Fourteenth and Fourth Amendments.  Initially, we note that pursuant to the Supreme Court's holding in Graham, 490 U.S. 386, such excessive force claims "are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard, rather than under a substantive due process standard."  Id. at 388.  Thus, we will analyze her claim under the framework for the Fourth Amendment only.

The Third Circuit has made quite clear that "'to state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable.'" Estate of Smith v. Marasco, 430 F.3d 140, 148 (3d Cir. 2005) (citation omitted).

---

[5] We note that despite Plaintiff being granted leave to file excess pages, Plaintiff has offered no counter to Defendants' argument that they are entitled to qualified immunity on this claim.

Our earlier holding that Defendants were entitled to summary judgment on Plaintiff's claims that she was seized in violation of the Fourth Amendment does not preclude a conclusion that Plaintiff was seized in violation of the Fourth Amendment for the purposes of her excessive force claims. Indeed, Plaintiff's failure to plead seizure when she was stopped by Officer Brush or arrested by Officers Brush and Walker in her Fourth Amendment claims accounts for our granting of summary judgment on those claims. Thus, in our consideration of Plaintiff's instant excessive force claim, we hold that Plaintiff was seized for Fourth Amendment purposes when Officer Brush pulled her over, and again when Officers Brush and Walker arrested her and took her into custody. Our holdings are not disturbed by Plaintiff's fleeing the traffic stop because she submitted to Officer Brush's authority initially. See Couden v. Duffy, 446 F.3d 483, 493-94 (3d Cir. 2006).

Thus, we must determine whether such seizures were reasonable. The Third Circuit has held that when analyzing the reasonableness of seizures in the context of an excessive force claim, courts are to consider several factors:

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight . . . whether the physical force applied was of such an extent as to lead to injury . . . the possibility that the person subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the

33

context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time.

Marasco, 430 F.3d at 150.  Given the genuine issues of material fact that bear on

reasonableness, e.g. Officer Brush's certification status on May 2, 2003, as well as

the circumstances surrounding the demeanor and actions of Officer Brush when he

initially approached Plaintiff's vehicle, and the actions of Officers Brush and

Walker during the pursuit and apprehension of Plaintiff, Defendants are not

entitled to summary judgment on Plaintiff's excessive force claims on the basis of

reasonableness.

We turn, then, to Defendants' argument that they are entitled to qualified

immunity on Plaintiff's excessive force claim.  The Third Circuit has provided

substantial guidance on the determination of this issue:

> In considering whether qualified immunity applies, a court must first decide whether the facts, taken in the light most favorable to the plaintiff, demonstrate a constitutional violation.  If so, the court next determines whether the constitutional right in question was clearly established.  The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  If the officer's mistake as to what the law requires is reasonable, the officer is entitled to qualified immunity.

Couden, 446 F.3d at 492 (citations and internal quotations omitted) (emphasis

added).  In the light most favorable to Plaintiff, Defendants' actions, among them

Case 4:05-cv-00871-JEJ   Document 56   Filed 01/22/07   Page 35 of 52

Officer Brush's alleged approach of Plaintiff's vehicle during a routine traffic stop with his hand on his gun (doc. 52, Pl.'s Exh. W, ¶ 76) and Officer Walker's alleged attempts to force Plaintiff's vehicle off the road (docs. 50, ¶ 13; 41, Defs.' Exh. 4 at 124-127) demonstrate constitutional violations.  Moreover, a reasonable officer may have recognized such conduct as unlawful in the situation that these Officers confronted.  In any event, the genuine issues of material fact, such as the manner in which Officer Brush approached Plaintiff's car and whether Officer Walker attempted to force Plaintiff's vehicle off of the road, preclude the granting of summary judgment in favor of the Defendants on the basis that they are entitled to qualified immunity.

Because we have found that some of Plaintiff's § 1983 claims against Officers Brush and Walker withstand Defendants' Motion (doc. 40-1), we turn now to her § 1983 claims against the Borough of Montrose and Chief Korty.

### 2.    Count I

In Count I, Plaintiff alleges that the Borough violated § 1983 by failing to adequately train and supervise Officers Brush and Walker.  (Rec. Doc. 17).  In their Brief in Support of the Motion, Defendants argue that they are entitled to summary judgment on this claim because "Plaintiff will not be able to meet her burden of proof at the time of trial of any municipal policy or custom or any

35

conduct of sufficient duration, or frequency and consistency." (Rec. Doc. 42 at 5). In her Brief in Opposition, Plaintiff argues that summary judgment on this claim should be denied because "[b]y Montrose failing to follow the law to ensure that its officers have met all the training requirements of the MPOETC and were recertified every two (2) years, the [Borough] has demonstrated a gross indifference to the rights of its inhabitants." (Rec. Doc. 50 at 18).

As Plaintiff accurately indicated, the Supreme Court has held that "municipalities and other local governmental bodies are 'persons' within the meaning of § 1983." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997) (citing Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 689 (1978)). However, "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." Id. Rather, a plaintiff alleging municipality violation of § 1983 must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Id.

Thus, as the Court of Appeals for the Third Circuit has recognized, even "in the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) (citing City of Canton v. Harris, 489 U.S. 378, 388 (1989)).

36

However, for a plaintiff to prevail in these circumstances, they must, indeed,

satisfy a high burden:

> failure to train can serve as the basis for § 1983 liability only 'where the failure to train amounts to <u>deliberate indifference</u> to the rights of persons with whom the [municipal employees] come into contact.'  'Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983.'  The focus in this determination is on <u>the adequacy of the training program in relation to the task the particular officers must perform</u> and the <u>connection</u> between the identified deficiency in the municipality's training program and the ultimate injury.  To succeed on a § 1983 claim, the party must prove that the training deficiency actually caused the injury.

<u>Reitz</u>, 125 F.3d at 145 (quoting <u>Harris</u>, 489 U.S. at 388-89) (emphasis added).

Nevertheless, the Supreme Court has indicated that in <u>Harris</u>, it "did not foreclose

the possibility that evidence of a single violation of federal rights, accompanied by

a showing that a municipality has failed to train its employees to handle recurring

situations could trigger municipal liability."  <u>Brown</u>, 520 U.S. at 409.

In <u>Reitz</u>, the Third Circuit affirmed a district court's grant of summary

judgment on a § 1983 claim, stemming from a failure to train, on the grounds that

plaintiffs presented no evidence of deliberate indifference where they had shown

neither evidence of specific training that the county should have offered nor

evidence of prior, similarly tortious conduct by the county's employees.  125 F.3d

at 145.

In the instant action, Plaintiff can buttress her argument that the Borough's inadequate training of Officers Brush and Walker amounted to deliberate indifference with Chief Korty's testimony, the contents of the Department's training manual, and Officer Walker's testimony.  Chief Korty testified that the Department itself offered no training to its officers and brought in no third parties to provide any training.  (Rec. Doc. 41, Defs.' Exh. 7 at 7).  Rather, Chief Korty testified that the Department provided its officers a training manual that has not been updated since 1984 and Chief Korty made the necessary arrangements to keep officers' certifications up-to-date.  (Rec. Doc. 41, Defs.' Exh. 7 at 6-7).

Further, in contrast to <u>Reitz</u>, Plaintiff has suggested topics for which the Department did not offer training that Plaintiff argues it should have.  The training manual does not contain specific regulations concerning the use of a personal vehicle in a pursuit or the approach of a vehicle with a hand on the officer's weapon.  (Rec. Doc. 41, Defs.'s Exhs. 6 at 11; 7 at 6, 11).  Additionally, the Department gave its officers no other specific instruction on the issues.  (Rec. Doc. 41, Defs.' Exhs. 6 at 11; 7 at 11).  Cognizant of <u>Brown</u> and <u>Harris</u>, we also note that traffic stops are likely to be a recurring situation, and in a municipality that has only one patrol car (doc. 41, Defs.' Exh. 7 at 27), pursuit with a personal vehicle may be as well.

38

Finally, unlike the circumstances in <u>Reitz</u>, Plaintiff has elicited testimony from Chief Korty that he knew of at least one complaint against Officer Brush and failed to investigate it, and that he may have heard of a complaint against Officer Walker.  (Rec. Doc. 41, Defs.' Exh. 7 at 31-32).  Although this admittedly vague testimony may not constitute evidence of prior tortious conduct, a jury could fault the Borough and/or Chief Korty for this lack of information because of their failure to investigate or take any action on the complaint(s).

Accordingly, we will deny Defendants' Motion with regard to Count I, on the grounds that Plaintiff has developed a sufficient record to prevent judgment as a matter of law that she could not possibly satisfy the "deliberate indifference" standard applicable to a § 1983 claim against a municipality for failure to train and supervise.

### 3.      Count II

In Count II, Plaintiff alleges that Chief Korty is liable for a violation of § 1983 because of his status as the supervisor of Officers Brush and Walker at all relevant times prior to May 2, 2003.  (Rec. Doc. 17).  In their Brief in Support of the Motion, Defendants argue that they are entitled to summary judgment on this claim because "Plaintiff relies upon one prior similar traffic stop of the Plaintiff by Officer Brush in February, 2003, . . . [and] there was nothing unconstitutional

about that prior traffic stop . . . ."  (Rec. Doc. 42 at 5-6).  In fact, Plaintiff does not rely solely upon that traffic stop.  Rather, in her Brief in Opposition, Plaintiff argues that summary judgment on this claim should be denied because Chief Korty demonstrated deliberate indifference "[by] allowing an individual [Officer Brush] who is not a certified Police Officer to go out and impersonate a Police Officer . . . " and because "Walker's pursuit in an unmarked vehicle without lights or sirens violates Pennsylvania Law . . . ."  (Rec. Doc. 50 at 20).

Initially, we note that Plaintiff's repeated references to the Department and Chief Korty's alleged failures to abide by Pennsylvania law miss the mark.  § 1983 applies to those actions that deprive people of their rights under "the Constitution and laws . . ."  "Laws" is admitted vague, but the context in which it is used and the jurisprudence considering the statute make it clear that the statute addresses violations of <u>federal</u> law.  <u>See</u> <u>Anderson v. Davila</u>, 125 F.3d 148, 159 (3d Cir. 1997) (noting that "[t]o make out a cause of action under Section 1983, [the plaintiff] must show that (1) the defendants acted under color of law; and (2) their actions deprived him of rights secured by the Constitution or federal statutes.").  <u>See also</u> <u>Brown</u>, 520 U.S. at 406-07 (noting that "[t]hat a plaintiff has suffered a deprivation of <u>federal</u> rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation . . . .") (emphasis

added).  Although we recognize that violation of certain Pennsylvania laws may be unconstitutional, Plaintiff has not made this particular argument, and thus, we do not consider it here.

Accordingly, we go to the merits of Plaintiff's claims that Chief Korty exhibited a deliberate indifference to the constitutional rights of those people with whom Officers Brush and Walker came in contact because he "knew of the violent propensities of Brush and Walker but aided and abetted the violations and failed to prevent the violations when he had a chance to do so."  (Rec. Doc. 17, ¶ 41).

The jurisprudence on § 1983 makes clear that "to establish <u>personal</u> liability in a § 1983 action, it is enough to show that the official, acting under the color of state law, caused the deprivation of a federal right."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 (1985) (emphasis in original).  The Court of Appeals for the Third Circuit has explained the various forms that such causation may take: "'[a][n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of <u>actual knowledge and acquiescence</u>.'"  <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005) (quoting <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988)) (emphasis added).

41

Plaintiff has elicited testimony from Chief Korty that he knew of at least one complaint against Officer Brush, which alleged that the Officer was brusque at a traffic stop, and Chief Korty failed to investigate it, and that Chief Korty may have heard of a complaint against Officer Walker.  Although this admittedly vague testimony does not constitute evidence that Chief Korty had any prior knowledge of unconstitutional behavior by either Officer Brush or Officer Walker, his failure to make any inquiry or investigation into the complaint(s) may demonstrate an acquiescence in the possibility of unconstitutional conduct.  Thus, Defendants are not entitled to judgment as a matter of law on this Count.

### B.   Plaintiff's 42 U.S.C. §§ 1985 and 1986 Claims (Count IV)

We now consider whether Defendants are entitled to summary judgment on Plaintiff's §§ 1985 and 1986 claims stemming from her contention that Officers Brush and Walker conspired to deprive her of her rights under the Fourth, Fifth, and Fourteenth Amendment.  (Rec. Doc. 17).  In their Brief in Support of the Motion, Defendants argue that they are entitled to summary judgment on these claims because Plaintiff failed to file this action within one year of May 2, 2003 and because Plaintiff has presented no evidence to support her allegations.  (Rec. Doc. 42 at 11-12).  Defendants have provided us only persuasive authority on their

arguments.[6]  In her Brief in Opposition, Plaintiff argues that summary judgment

should be denied because she has a viable claim under § 1985.  (Rec. Doc. 50 at

25).

We can dismiss summarily Defendants' argument that they are entitled to

summary judgment on Plaintiff's §§ 1985 and 1986 claims on the grounds that

they are time-barred.  Given Plaintiff's pleadings (doc. 17 at 10),[7] Plaintiff's §

1985 claim invokes only § 1985(3),[8] and the Third Circuit has held that such

claims are subject to a two-year statute of limitations, Bougher v. Univ. of

Pittsburgh, 882 F.2d 74, 79 (3d Cir. 1989).  Similarly, the Third Circuit has noted

that § 1986 claims are also subject to a two-year statute of limitations.  O'Connor

---

[6] We note that Defendants' brief could have been more persuasive had defense counsel
been more cognizant of our location within the Third Circuit.

[7] Plaintiff's allegation as to manner in which Defendants engaged in discrimination
states: "Defendants individually, jointly and severally planned and acted in concert under Color
of Law to deprive the Plaintiff of her Constitutional Rights and did indeed violate her Fourth,
Fifth and Fourteenth Amendment Rights resulting in injury and damage to the Plaintiff as
aforesaid."  (Rec. Doc. 17 at 10).

[8] § 1985 provides:

(1) Preventing officer from performing duties . . .
(2) Obstructing justice; intimidating party, witness, or juror . . .
(3) Depriving persons of rights or privileges.  If two or more persons in any State or
Territory conspire, or go in disguise on the highway or on the premises of another, for the
purpose of depriving, either directly or indirectly, any person or class of persons of the
equal protection of the laws, or of equal privileges or immunities under the laws, or for
the purpose of preventing or hindering the constituted authorities of any State or
Territory from giving or securing to all persons within such State or Territory the equal
protection of the laws . . . .

v. City of Newark, 440 F.3d 125, 129 n.7 (3d Cir. 2006).  Accordingly, we hold

that Plaintiff's §§ 1985 and 1986 claims are not time-barred because her initial

Complaint (doc. 1) was filed prior to May 2, 2005.

We will now consider the merits of Plaintiff's §§ 1985 and 1986 claims.  As

to § 1985, it is well-settled that "[t]he language [of § 1985(3)]  requiring intent to

deprive of equal protection, or equal privileges and immunities, means that there

must be some racial, or perhaps otherwise class-based, invidiously discriminatory

animus behind the conspirators' action."  Bray v. Alexandria Women's Health

Clinic, 506 U.S. 263, 268-69 (1993) (quoting Griffin v. Breckenridge, 403 U.S. 88,

102 (1971) (emphasis in original)).  Although Plaintiff alleged "invidious

discriminatory animus" on the basis of her gender in the Complaint (doc. 17 at 10),

Plaintiff's Brief in Opposition (doc. 50 at 25) to the instant Motion directs this

Court to no evidence of any gender-based discrimination.  Accordingly, even if this

Court were to hold that § 1985(3) afforded a remedy for those suffering conspiracy

on the basis of gender discrimination, Defendants would still be entitled to

summary judgment on Plaintiff's § 1985 claim because Plaintiff has shown no

genuine issue of material fact as to this issue and Defendants are, accordingly,

entitled to judgment as a matter of law.

Further, Defendants are also entitled to summary judgment on any claim that

Plaintiff may have alleged pursuant to § 1986 in Count IV because a § 1986 claim can only be sustained where "a defendant know[s] of a § 1985(3) conspiracy and 'ha[s] power to prevent or aid in preventing the commission of the same, [but] neglects or refuses so to do . . . .'"  <u>Santiago v. Philadelphia</u>, 435 F. Supp. 136, 156 (E.D. Pa. 1977).  As we have granted summary judgment on Plaintiff's § 1985 claim and a § 1986 claim is not viable without a § 1985 claim, we will also grant summary judgment on Plaintiff's § 1986 claim.

**C.      Plaintiff's Claims based upon Pennsylvania State Law**

      **1.      Counts V and VI**

As Plaintiff's Brief in Opposition to the Motion indicates that Plaintiff is not pursuing her defamation and invasion of privacy claims (doc. 50 at 25), Counts V and VI, we will grant Defendants' Motion for summary judgment as to these Counts.

We also note here that the viability of Plaintiff's civil conspiracy claims are affected by the viability of her other claims grounded in Pennsylvania's tort law. <u>See</u> <u>Boyanowski v. Capital Area Intermediate Unit</u>, 215 F.3d 396, 407 (3d Cir. 2000) (noting "[s]ince liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means of establishing vicarious liability for the underlying tort.")

(citation and internal quotation omitted).  See also Rose v. Wissinger, 439 A.2d 1193, 1199 (Pa. Super. Ct. 1983) (noting that "[i]nasmuch as we do not find any basis for the defamation or the outrageous conduct theories, there could not be any conspiracy to commit those acts.").  Accordingly, similar to our approach to Plaintiff's claims under § 1983, we will consider Plaintiff's remaining tort claims, Counts VIII through X, prior to considering Plaintiff's civil conspiracy claims, Count VII.

### 2.    Count VIII

We next consider whether Officers Brush and Walker are entitled to summary judgment on Plaintiff's false arrest claims.  In their Brief in Support of the Motion, Defendants argue that they are entitled to summary judgment on these claims because probable cause supports the arrest.  (Rec. Doc. 42 at 9-11).  In her Brief in Opposition, Plaintiff argues that summary judgment should be denied because Officer Brush was not actually certified as a police officer to make the arrest and Plaintiff pleaded guilty to disorderly conduct, not among the original charges, for the events that transpired on May 2, 2003.  (Rec. Doc. 50 at 26).

As we indicated in our above discussion of Plaintiff's § 1983 claims for false arrest, viable claims for false arrest require a lack of probable cause, and probable cause is established by Plaintiff's guilty plea.  Frederick, 2006 U.S. Dist. LEXIS

46

87037, at *30. <u>Imbergamo</u>, 392 F. Supp. 2d at 696. As further indicated above, a finding that Plaintiff's false arrest claims were valid would impermissibly imply that her underlying conviction is invalid. <u>Nelson v. Jashurek</u>, 109 F.3d at 144. Thus, Officers Brush and Walker are entitled to summary judgment on these claims.

### 3. Count IX

We next consider whether Officers Brush and Walker are entitled to summary judgment on Plaintiff's personal injury claims. In their Brief in Support of the Motion, Defendants argue that they are entitled to summary judgment on these claims for two primary reasons: Plaintiff did not specify whether she is claiming a negligent or an intentional tort and Plaintiff can not satisfy her burden for proving punitive damages. (Rec. Doc. 42 at 13-14). In her Brief in Opposition, Plaintiff argues that summary judgment should be denied because Plaintiff suffered injury during the May 2, 2003 incident and her punitive damages claim is viable. (Rec. Doc. 50 at 26-27). Plaintiff neither addresses Defendants' argument that this Count should be dismissed because Plaintiff has failed to specify a cause of action nor cites any authority in support of her arguments.

Upon review of Count IX of Plaintiff's Complaint (doc. 17 at 12), we find that Plaintiff has not alleged the elements of a prima facie case of any tort of which

we are aware.  Further, Plaintiff has not alleged that she is entitled to punitive

damages.  Moreover, as Plaintiff's § 1983 claims for excessive force and pendent

intentional infliction of emotional distress claims have survived this Motion, any

relief to which she is entitled for those injuries alleged in Count IX is recoverable

pursuant to those claims.  Accordingly, as there is no genuine issue of the material

fact, Plaintiff has failed to allege a cause of action, we will grant Defendants'

Motion for summary judgment on Count IX.

**4.     Count X**

We next consider whether Officers Brush and Walker are entitled to

summary judgment on Plaintiff's intentional infliction of emotional distress claims.

In their Brief in Support of the Motion, Defendants argue that they are entitled to

summary judgment on these claims because there is no evidence that Defendants

engaged in extreme and outrageous conduct.  (Rec. Doc. 42 at 14-15).  In her Brief

in Opposition, Plaintiff argues that summary judgment should be denied because

Plaintiff has evidence to support a prima facie case on these claims.  (Rec. Doc. 50

at 27-28).

In Pennsylvania, to make out a prima facie case for intentional infliction of

emotional distress, the plaintiff must show: "1) the conduct must be extreme and

outrageous; 2) it must be intentional or reckless; 3) it must cause emotional

distress; 4) that distress must be severe." Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997). In light of the genuine issues of material fact as to the manner in which Officer Brush approached Plaintiff's car, whether Officer Walker attempted to force Plaintiff's vehicle off of the road, and the force exerted by the Officers when they took Plaintiff into custody, which bear on the issue of whether their conduct was "extreme and outrageous," Defendants are not entitled to summary judgment on these claims.

**5.     Count VII**

Finally, we consider whether Officers Brush and Walker are entitled to summary judgment on Plaintiff's civil conspiracy claims. In their Brief in Support of the Motion, Defendants argue that they are entitled to summary judgment on these claims because she can not prove any requisite underlying tort or a conspiracy to commit it. (Rec. Doc. 42 at 12-13). In her Brief in Opposition, Plaintiff argues that summary judgment should be denied because sufficient evidence exists to support the claims. (Rec. Doc. 50 at 25-26).

In Pennsylvania,

[i]n order for a claim of civil conspiracy to proceed . . . [i]t must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice, i.e., intent to injure, is essential in proof of a conspiracy. This unlawful intent must be absent justification.

<u>Lackner v. Glosser</u>, 892 A.2d 21, 34-35 (Pa. Super. Ct. 2006) (quoting <u>Thompson</u>

<u>Coal Co. v. Pike Coal Co.</u>, 412 A.2d 466, 472 (Pa. 1979)) (internal citations and

quotations omitted) (emphasis in original).  Plaintiff's sole argument is that "the

overt act has been to file a criminal action against the Plaintiff and have him [sic]

arrested, thus harming him [sic]."  (Rec. Doc. 50 at 25).  As we have already held

that Plaintiff's arrest and prosecution were proper because her guilty plea

demonstrates that her arrest was supported by probable cause, the filing of a

criminal action against Plaintiff was not an unlawful act.  Accordingly, no genuine

issue of material fact exists, Defendants are entitled to judgment as a matter of law,

and we will grant summary judgment on this Count.

**NOW, THEREFORE, IT IS ORDERED THAT**:

1.      Defendants' Motion (doc. 40) is **GRANTED** in part and **DENIED** in

part:

   a.      Defendants' Motion is **GRANTED** to the extent that:

      i.      Plaintiff's § 1983 claims for malicious prosecution are

         dismissed;

      ii.      Plaintiff's § 1983 claims for seizure of her person, in

         violation of the Fourth Amendment, are dismissed;

      iii.      Plaintiff's § 1983 claim of a Fourth Amendment

violation, arising out of the alleged seizure of documents in her truck, against Officer Walker is dismissed;

iv.    Plaintiff's § 1983 claims for abuse of process are dismissed;

v.    Plaintiff's § 1983 claims for false arrest are dismissed;

vi.    Plaintiff's §§ 1985 and 1986 claims are dismissed; and

vii.    Plaintiff's pendent defamation, invasion of privacy, false arrest, "personal injury," and civil conspiracy claims are dismissed.

b.    Defendants' Motion is **DENIED** to the extent that:

i.    Plaintiff's § 1983 claim against Officer Brush for Fourth Amendment violation, arising out of his alleged seizure of documents in her truck, remains viable;

ii.    Plaintiff's § 1983 claims against Officers Brush and Walker for use of excessive force remain viable;

iii.    Plaintiff's § 1983 claim against the Borough for failing to adequately train and supervise Officers Brush and Walker remains viable;

iv.    Plaintiff's § 1983 claim against Chief Korty for failure to

51

adequately supervise Officers Brush and Walker remains

viable; and

v.      Plaintiff's pendent intentional infliction of emotional

distress claims against Officers Brush and Walker remain

viable.


s/ John E. Jones III
John E. Jones III
United States District Judge